OPINION
{¶ 1} Defendant-appellant, Michael Cossack, Jr., appeals from a Youngstown Municipal Court judgment convicting him of two counts of assault, resisting arrest, and obstructing official business following a jury trial.
 {¶ 2} On September 18, 2002, appellant was working in his garage on Madison Avenue in Youngstown when he noticed two police officers ticketing cars in front of his business. He approached the officers regarding the parking tickets. Appellant believed the officers should not have been issuing the tickets.
 {¶ 3} According to appellant, he was calm and cordial with the officers. But according to Officer John Hall, appellant became confrontational and irate. Appellant continuously yelled at the officers and, according to Officer Hall, refused to calm down. After several warnings, the officers decided to arrest appellant for disorderly conduct. When Officer Copeland approached appellant to arrest him, he ran away into his garage.
 {¶ 4} The officers followed appellant into the garage and found him talking on the phone. Officer Hall grabbed a hold of appellant's arms and told him to stand up, but he refused. Appellant then took a swing at Officer Hall, so Officer Hall sprayed appellant with pepper spray. Appellant then ran towards Officer Copeland and threw his elbow at the back of her head, but he missed her. Appellant then ran away from the officers. As he ran, appellant yelled at the officers and threw tools at them. So they decided to call for backup.
 {¶ 5} Backup arrived and the officers located appellant inside the garage in his office. Appellant was lying on the floor and claimed Officer Hall beat him with a night stick. Appellant had called an ambulance in the meantime. A paramedic checked him and found no visible injuries. Appellant then refused to walk out of the garage and the officers had to carry him out. The officers arrested appellant for assault. The ambulance then took appellant to St. Elizabeth's Hospital. He was later released and sent to jail.
 {¶ 6} Complaints were filed against appellant charging him with two counts of assault, first degree misdemeanors in violation of R.C.2903.13(A); one count of resisting arrest, a second degree misdemeanor in violation of R.C. 2921.33(A); and one count of obstructing official business, a second degree misdemeanor in violation of R.C. 2921.31.
 {¶ 7} Appellant proceeded to a jury trial where the jury found him guilty on all counts. The trial court sentenced appellant to 180 days in jail on each count of assault to be served concurrently, 30 days for resisting arrest to be served consecutively, and 30 days for obstructing official business to be served consecutively for a total of 240 days in jail.
 {¶ 8} Appellant filed a timely notice of appeal on December 10, 2003. The trial court stayed his sentence pending this appeal.
 {¶ 9} Appellant raises six assignments of error, the first of which states:
 {¶ 10} "The trial court denied the defendant-appellant the constitutional right to an impartial jury by allowing a juror who had an independent, personal relationship with the prosecuting attorney."
 {¶ 11} Appellant contends that Juror One had a personal relationship with the prosecutor and, therefore, the court should have dismissed him. He asserts that since the prosecutor used his relationship with Juror One to make a point during voir dire, the prosecutor knew Juror One was favorable to his side. Although appellant admits that he did not object to Juror One, he urges this court to consider the seating of this juror as plain error. He contends that since we are not privy to jury deliberations, we must assume that Juror One's personal relationship with the prosecutor affected his decision in this case.
 {¶ 12} Since appellant did not object to the seating of Juror One, this assignment of error will be reviewed for plain error. Plain error should be invoked only to prevent a clear miscarriage of justice. Statev. Underwood (1983), 3 Ohio St.3d 12, 14, 444 N.E.2d 1332. Plain error is one in which but for the error, the outcome of the trial would have been different. State v. Long (1978), 53 Ohio St.2d 91, 97, 372 N.E.2d 804.
 {¶ 13} During voir dire, the prosecutor asked the prospective jurors if any of them knew him. Juror One stated that he did not know the prosecutor personally, but knew him "from the store." (Tr. 9). The prosecutor then commented that he worked at a convenience store at night. (Tr. 9). He asked Juror One if this would affect him in determining appellant's guilt or innocence, to which Juror One responded "no." (Tr. 9). The prosecutor also asked Juror One if he had ever had a conversation with him, to which Juror One again replied "no." (Tr. 9).
 {¶ 14} Later during voir dire, the prosecutor discussed different ways to discern whether someone was telling the truth and how to determine which of two stories was true. (Tr. 13-14). He then asked Juror One: "I'm going to ask, my fellow Wilson graduate, would you look at perhaps whether the stories make sense?" (Tr. 14). Juror One answered and the prosecutor then posed the same question to several other prospective jurors. (Tr. 14-15).
 {¶ 15} These two instances were the only occurrences involving the prosecutor and Juror One. Appellant's counsel never sought to excuse Juror One for cause based on this alleged personal relationship with the prosecutor. Furthermore, appellant's counsel could have used a peremptory challenge to excuse Juror One from sitting on the jury. Presumably appellant's counsel did not challenge Juror One because there was no indication of a personal relationship with the prosecutor as appellant now contends. While the prosecutor did indicate that Juror One was a "fellow Wilson graduate," he did not indicate that he and Juror One graduated in the same class or even knew each other from high school. The prosecutor could have learned that Juror One was a Wilson graduate from his jury questionnaire. And Juror One stated that his knowing the prosecutor "from the store" would not affect him in determining appellant's guilt or innocence. Juror One merely indicated that he recognized the prosecutor from his employment at a convenience store. Juror One further acknowledged that he never even had a conversation with the prosecutor. This hardly seems to be a personal relationship as appellant suggests. We will not presume irregularity in the jury's deliberations, as appellant urges us to do, based on the simple recognition of the prosecutor by a juror. There is no indication on the record that the outcome of the trial would have been different had Juror One not been on the jury. Therefore, appellant's first assignment of error is without merit.
 {¶ 16} Appellant's second assignment of error states:
 {¶ 17} "The entry into the building by the police to arrest defendant-appellant was without probable cause that a crime had been committed or without a warrant to enter such premises without consent of defendant-appellant. as such, the arrest and seizure of defendant-appellant is unlawful."
 {¶ 18} Here appellant contends that the arresting officers had no authority to enter his place of business to arrest him. Appellant points to Officer Hall's testimony that he and Officer Copeland decided to arrest him for disorderly conduct while he was outside discussing the propriety of the parking tickets with them. Appellant notes that he then went back into his building and the officers followed him in to arrest him.
 {¶ 19} Appellant argues that since he was never charged with disorderly conduct, it is speculative to determine which section of the disorderly conduct statute the officers believed he had violated. And since the disorderly conduct statute provides for both fourth degree and minor misdemeanor disorderly conduct, appellant contends we have no way of knowing if the officers believed he had committed a fourth degree or a minor misdemeanor. Appellant continues that if they believed he had committed only a minor misdemeanor, then the officers had no probable cause to enter his building to arrest him. Instead, he asserts, they should have simply left a citation for him.
 {¶ 20} Appellant failed to raise this issue in the trial court. Therefore, it too will be reviewed for plain error.
 {¶ 21} Initially, it should be noted that since the obstructing official business charge occurred before appellant fled into his building, appellant's argument in this assignment of error does not apply to his obstructing official business conviction.
 {¶ 22} Disorderly conduct is a minor misdemeanor unless one of four other elements is met including, "[t]he offender persists in disorderly conduct after reasonable warning or request to desist." R.C.2917.11(E)(2)(3)(a).
 {¶ 23} Appellant argues that because the evidence does not support a conviction for disorderly conduct, the officers had no probable cause to follow him into his building to arrest him.
 {¶ 24} This case is very similar to Akron v. Holmes, 9th Dist. No. 21590, 2004-Ohio-832. In Holmes, two police officers responded to a noise complaint at someone's house. The officers knocked on the door but were told to go away. After more knocking they stated they needed to speak to the owner. A man named Joshua Holmes partially opened the door but stated that he was not the home owner. One of the officers put his foot in the doorway to prevent Holmes from closing the door. The officer attempted to step into the house and Holmes pushed the door to close it. The officer's hand and leg became trapped in the doorframe. The other officer pushed the door open. The two officers then entered the house to arrest Holmes for felonious assault. Once the officers were inside the house, Holmes resisted his arrest. And others became involved. In addition to Holmes, police arrested one woman for obstructing official business and resisting arrest, another woman for violations of a noise ordinance and obstructing official business, and a man for obstructing official business.
 {¶ 25} The three cases were consolidated and the defendants filed a motion to suppress, which the trial court granted in part. The City of Akron appealed, arguing that the trial court erred in finding that the entry into the home was unlawful and in violation of theFourth Amendment.
 {¶ 26} The Ninth District initially noted that the issue in the case was whether the officers' observations of the defendants' statements and conduct made during a presumed unlawful arrest should be suppressed if those statements and conduct are offenses in and of themselves. Id. at ¶ 13. Quoting this court in State v. Ali, 154 Ohio App.3d 493,2003-Ohio-5150, at ¶ 13, the court stated:
 {¶ 27} "`The Fourth Amendment prohibits unreasonable searches and seizures. Evidence obtained as a result of an unreasonable search and seizure, which would include an arrest without probable cause, is suppressed as representing the fruit of the poisonous tree. Generally, incriminating statements obtained during an unlawful arrest are to be suppressed. However, an observation of a fresh crime committed during orafter the arrest is not to be suppressed even if the arrest is unlawful.' (Emphasis added.)" (Internal citations omitted.)
 {¶ 28} The court further noted that when a person who is being arrested commits a new crime during or after the arrest, the conduct witnessed which constitutes that new crime need not be suppressed merely because the initial arrest, which may be the motive for the new crime, turns out to be unlawful. Holmes, at ¶ 14. It went on to point out that the exclusionary rule does not sanction violence as a permissible response to improper conduct by police. Id. And the court remarked that further criminal acts after an unlawful search and seizure, such as obstructing official business and resisting arrest, are not legitimized by Fourth Amendment transgressions. Id.
 {¶ 29} Based on the above, the court concluded that it did not have to decide whether the officers entered the house unlawfully when they arrested Joshua because the defendants' conduct was not privileged against arrest. Id. at ¶ 15. This was because the defendants engaged in independent criminal conduct. Id.
 {¶ 30} Given the reasoning in Holmes, we, too, need not decide whether the officers could have properly arrested appellant for disorderly conduct. Appellant's acts of assaulting the officers and resisting arrest were independent criminal acts. Whether appellant's arrest was lawful or not did not give appellant a free pass to commit independent criminal acts.
 {¶ 31} Furthermore, the fact that appellant was not ultimately charged with disorderly conduct is irrelevant. The prosecutor has the final say on what charges to bring against an individual, not the arresting officer. And plaintiff-appellee, the State of Ohio, makes a good analogy. It compares this situation to one where an officer originally stops a driver for failure to use a turn signal, finds that the person is driving under the influence, and subsequently only charges the person with driving under the influence. In both cases, the officer does not cite the person for the original violation, but only for a subsequent, more serious offense.
 {¶ 32} Therefore, the trial court did not commit plain error in failing to suppress the officers' testimony of what occurred after appellant entered the garage. Accordingly, appellant's second assignment of error is without merit.
 {¶ 33} Appellant's third assignment of error states:
 {¶ 34} "It was error for the trial court to allow improper character evidence of appellant by allowing testimony from law enforcement officers that the area where appellant was located was a `high crime' area."
 {¶ 35} Appellant argues that the trial court erred in admitting prejudicial character evidence against him. He points to several instances where officers testified about prior dealings with him. Appellant asserts that this evidence put the idea into the jurors' minds that he was an aggressive person who was confrontational with law enforcement.
 {¶ 36} A trial court has broad discretion in determining whether to admit or exclude evidence and its decision will not be reversed absent an abuse of discretion. State v. Mays (1996), 108 Ohio App.3d 598, 617,671 N.E.2d 553. Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151,157, 404 N.E.2d 144.
 {¶ 37} Generally, evidence of a person's character or a character trait is not admissible to prove that he acted in conformity therewith on a particular occasion. Evid.R. 404(B). Additionally, evidence of other crimes, wrongs, or acts is not generally admissible to prove a person's character in order to show that he acted in conformity therewith. Evid.R. 404(B).
 {¶ 38} Appellant cites to three particular instances in the transcript where he alleges the court allowed improper character evidence. We will address each instance in turn.
 {¶ 39} The first alleged improper evidence appellant points to occurred during appellee's questioning of Detective Sergeant Cynthia Dellick as follows:
 {¶ 40} "Q Now at some point, did you — did it surprise you that they had an altercation with Mr. Cossack?
 {¶ 41} "A No.
 {¶ 42} "Q Why is that?"
 {¶ 43} "A I've had dealings with him previously, from 1997." (Tr. 106-107).
 {¶ 44} Appellant then objected based on relevancy. The trial court sustained the objection and appellee withdraw the question. (Tr. 107).
 {¶ 45} At the beginning of trial, the court instructed the jury:
 {¶ 46} "If a question is asked and an objection is raised to that question and I sustain that objection, you'll then not hear the answer, and you must not speculate as to what the answer might have been or as to the reason for the question." (Tr. 49).
 {¶ 47} The trial court also instructed the jury at the trial's conclusion: "Evidence does not include statements that were stricken by the court or which you were instructed to disregard. Such statements are not evidence and must be treated as though you had never heard them." (Tr. 219).
 {¶ 48} Since the trial court sustained appellant's objection, no error occurred as to this line of questioning. The trial court did not admit prejudicial character evidence because it sustained appellant's objection and appellee withdrew the question.
 {¶ 49} The second instance that appellant alleges prejudicial character evidence was introduced occurred later during the questioning of Detective Sergeant Dellick. Specifically, appellant takes issue with the following testimony:
 {¶ 50} "Q Now what were the mannerisms of Mr. Cossack when you came in contact with him that day? Was he mild? Aggressive? How would you describe him?
 {¶ 51} "A Aggressive, irritated, very usual, like I know him to be.
 {¶ 52} "Q He was screaming?
 {¶ 53} "A Yes.
 {¶ 54} "Q None of this came as a surprise to you?
 {¶ 55} "A No." (Tr. 113).
 {¶ 56} This time appellant did not object. Therefore, we must determine whether it was plain error for the court to permit this testimony.
 {¶ 57} While this testimony may suggest that appellant is not a calm, easygoing person, it was not so prejudicial as to require the court to have excluded it without an objection from appellant. Furthermore, had the court excluded this testimony, the trial's outcome would not have clearly been different. As will be discussed in appellant's fourth and fifth assignments of error, the evidence supported appellant's convictions. If this testimony by Detective Sergeant Dellick had not been admitted, the evidence would still support his convictions.
 {¶ 58} Finally, appellant takes issue with certain testimony his father gave on cross-examination. Appellee questioned Michael Cossack, Sr., in relevant part, as follows:
 {¶ 59} "Q * * * Now you know about your son's medical condition, do you not?
 {¶ 60} "A Yes, they said that he has a bipolar condition, and he has to take Zoloft and Lithium from time to time.
 {¶ 61} "Q If he doesn't take his medication, is he moody?
 {¶ 62} "A I don't know whether he has ever been on the medication, I wouldn't know. They would have to reveal that. I'm not that interested.
 {¶ 63} "* * *
 {¶ 64} "Q Aren't you concerned for your safety around your son?
 {¶ 65} "A Well, yes and no. I don't know what there is to be afraid of unless the Zoloft creates a monster out of him.
 {¶ 66} "Q Isn't it true that you changed the locks on your home to protect yourself from your son?
 {¶ 67} "A I didn't change the locks; it was mor [sic.] or less a scare tactic." (Tr. 164-65).
 {¶ 68} Again, appellant never objected during this line of questioning. So again, we must look at whether it was plain error for the court to admit this testimony.
 {¶ 69} The trial court did not commit plain error in failing to strike this testimony without an objection. As noted above, the evidence at trial supported appellant's convictions. Appellant cannot demonstrate that if this testimony by his father had been disallowed the outcome of his trial would have clearly been different.
 {¶ 70} Therefore, appellant's third assignment of error is without merit.
 {¶ 71} Appellant's fourth and fifth assignments of error share a common basis in law and fact and, therefore, we will address them together. They state, respectively:
 {¶ 72} "The trial court denied appellant due process under thefourteenth amendment due to the fact his convictions were against the manifest weight of the evidence and the jury's verdict was inconsistent with the evidence and testimony presented at trial."
 {¶ 73} "The evidence presented at trial was insufficient to establish appellant's guilt beyond a reasonable doubt and was therefore violative of appellant's due process rights under the fourteenth amendment."
 {¶ 74} Appellant contends that his convictions were against both the manifest weight and the sufficiency of the evidence. He points out that he and his witnesses contradicted the State's evidence. He also argues that reasonable minds could come to different conclusions on the issue of his guilt.
 {¶ 75} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict. Statev. Smith (1997), 80 Ohio St.3d 89, 113, 684 N.E.2d 668. In essence, sufficiency is a test of adequacy. State v. Thompkins (1997),78 Ohio St.3d 380, 386, 678 N.E.2d 541. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Smith, 80 Ohio St.3d at 113,684 N.E.2d 668.
 {¶ 76} Alternatively, in determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins,78 Ohio St.3d at 387, 678 N.E.2d 541. "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390, 678 N.E.2d 541.
 {¶ 77} Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts.State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 78} Appellant was convicted of two counts of assault in violation of R.C. 2903.13(A), one count of resisting arrest in violation of R.C.2921.33(A), and one count of obstructing official business in violation of R.C. 2921.31.
 {¶ 79} R.C. 2903.13(A) provides: "No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."
 {¶ 80} R.C. 2921.33(A) provides: "No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another."
 {¶ 81} R.C. 2921.31(A) provides: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."
 {¶ 82} Officer Hall testified regarding the two assaults. He stated that after he and Officer Copeland followed appellant inside the garage he approached appellant. (Tr. 72). Appellant was crouched down by the phone and Officer Hall grabbed his arms and told him to stand up. (Tr. 72). Appellant did not comply and then he swung his arm around at Officer Hall in an attempt to punch him. (Tr. 72). Officer Hall was able to avoid appellant's punch. (Tr. 72). Officer Hall then sprayed appellant with pepper spray and appellant ran out of the room. (Tr. 72-73). Officer Copeland tried to grab appellant by the arm. (Tr. 73). Appellant responded by throwing his elbow at the back of her head. (Tr. 73). However, he missed and did not strike her. (Tr. 73).
 {¶ 83} This testimony by Officer Hall demonstrated that appellant knowingly attempted to cause physical harm to both officers thus meeting the elements of assault.
 {¶ 84} As to the resisting arrest conviction, the following additional evidence was elicited. Officer Hall testified that he and Officer Copeland asked appellant to calm down several times but he refused and continued to yell at them. (Tr. 70-71). They decided then to arrest appellant for disorderly conduct. (Tr. 71). When they approached appellant and Officer Copeland attempted to take hold of his arm, appellant ran into the garage. (Tr. 71-72). After the assaults described above, with the officers in pursuit, appellant ran though the garage yelling and throwing creepers and other items at them. (Tr. 73-74).
 {¶ 85} Officers Hall and Copeland called for backup. Officer Hall testified that once the backup arrived and appellant had been examined by a paramedic, he attempted to handcuff appellant but appellant began kicking, flailing his arms, and grabbed a hold of Officer Hall's thumb and would not let go. (Tr. 78). The officers then finally arrested appellant. (Tr. 79). Officer Randy Miller testified that once he arrived on the scene the other officers were trying to walk appellant down the steps and put handcuffs on him while appellant was "throwing elbows," pushing against the officers, and refusing to walk on his own. (Tr. 98-99). Officer Miller further testified that appellant was fighting his arrest and would not give up his hands to be handcuffed. (Tr. 100, 103). Additionally, Detective Sergeant Dellick testified that appellant struggled, grabbed Officer Hall's hand, and was kicking. (Tr. 110-11).
 {¶ 86} Given this testimony, sufficient evidence existed to support appellant's resisting arrest conviction. The officers' testimony revealed that appellant forcefully interfered with his own lawful arrest.
 {¶ 87} And as to the obstructing official business conviction, the following testimony was relevant. Officer Hall testified that he and Officer Copeland were issuing the parking tickets when appellant ran at them in an aggressive manner. (Tr. 70-71, 81). He shouted expletives at the officers. (Tr. 70-71, 81). When the officers told appellant to go back in his garage, he refused. (Tr. 71, 82). Appellant argued with the officers about the parking tickets and tried to prevent them from issuing the tickets. (Tr. 82). Furthermore, Joseph Sebold, appellant's friend who witnessed the exchange, testified that appellant argued with the officers and got in the way of them doing their job. (Tr. 154-55).
 {¶ 88} This testimony by Officer Hall and Sebold supported all of the elements necessary to prove that appellant was guilty of obstructing official business.
 {¶ 89} Furthermore, as to appellant's sufficiency argument, appellant himself admits in his brief that reasonable minds could come to different conclusions on the issue of his guilt. When reasonable minds can reach differing conclusions on the issue of the defendant's guilt, sufficient evidence exists to support the defendant's convictions. A jury's verdict will not be disturbed unless reasonable minds could not reach the conclusion reached by the trier of fact. State v. Helman, 7th Dist. No. 03-CO-55, 2004-Ohio-4867, at ¶ 26; State v. Jenks (1991),61 Ohio St.3d 259, 273, 574 N.E.2d 492 (reversed on other grounds). Accordingly, appellant's fifth assignment of error is without merit.
 {¶ 90} Moving on to appellant's manifest weight argument, we must consider the rest of the evidence introduced at trial.
 {¶ 91} In his defense, appellant called several witnesses.
 {¶ 92} First, Jerrold Quarrels testified. Quarrels was at appellant's garage to pick up a car and witnessed appellant's argument with the police. He testified that when appellant realized the police were ticketing his cars he went out to talk to them about it. (Tr. 133). Quarrels stated that appellant was "a little upset" and he wanted to compromise with the officers about moving the cars. (Tr. 134). He testified that appellant kept asking the officers to let him move the cars to avoid the tickets. (Tr. 134). He stated that at first appellant was polite. (Tr. 134). But then "[t]empers got a little heated up by both sides." (Tr. 135). Quarrels stated that appellant then went into the garage to call the officers' supervisor. (Tr. 135).
 {¶ 93} Second, appellant's friend Sebold testified. He stated that when he noticed two officers ticketing cars outside, he told appellant about it and he went to check it out. (Tr. 147). Sebold testified he heard parts of the conversation between appellant and the officers. (Tr. 148). He stated he did not hear any heated yelling or obscenities, although there was arguing for a couple of minutes. (Tr. 148, 153-54). He also stated that appellant did not appear to be mad. (Tr. 148). He stated that when the officers would not let appellant move his cars to avoid a ticket, appellant told them he was going inside to call their supervisor. (Tr. 149).
 {¶ 94} Next, appellant's father testified. However, he did not witness anything until the officers were attempting to remove appellant from the garage. (Tr. 160).
 {¶ 95} After Cossack testified, Patsy Pilorusso, appellant's landlord testified. But he did not witness any of the events on the day in question. He only testified regarding issues appellant has had with officers ticketing cars by his garage.
 {¶ 96} Finally, appellant testified. He stated that when he realized that the officers were ticketing his cars, he approached them calmly. (Tr. 180-81). Appellant stated that he told the officers that he just needed to park the cars on the street while he moved cars around in his garage and that he could have them off of the street shortly. (Tr. 181). Appellant testified that when he told them that he was going to move the cars, the officers told him that if he did, they would take him to jail. (Tr. 181). He stated that he then walked down the street to where his truck was parked and asked if he could at least pull his truck in the garage, but Officer Hall threatened to take him to jail if he got behind the wheel. (Tr. 181-82). He stated that they exchanged words. (Tr. 182). Appellant testified that he next headed back towards his garage and told the officers he was going to call their supervisor and the councilman. (Tr. 183).
 {¶ 97} Appellant testified that he then went inside and called their supervisor when the officers approached him and told him to get off of the phone. (Tr. 184-85). He refused. (Tr. 185). Appellant testified that the officers then sprayed him with mace. (Tr. 185). He denied that he ever swung at the officers. (Tr. 185). According to appellant, the two officers began to beat him. (Tr. 185). He then ran from them. (Tr. 185-86).
 {¶ 98} When the officers left the building, appellant called an ambulance. (Tr. 186). Soon after, several officers came in and dragged him from the building. (Tr. 187). Again, appellant denied ever touching any of the officers. (Tr. 187-88, 190).
 {¶ 99} Finally, appellant testified about a conspiracy against him. He claimed that the doctor who examined him, the paramedic, and the police officers perjured themselves. (Tr. 206). He stated that they all stick together and that they all probably went out to dinner together 25 times before this trial to get together and memorize what they were going to say. (Tr. 206-207).
 {¶ 100} Considering this additional evidence, we see that there are two sides to this story — appellant's side and the police officers' side. Therefore, this case turned on the witnesses' credibility. The jury was in the best position to judge the witnesses' credibility. Although an appellate court is permitted to independently weigh the credibility of the witnesses when determining whether a conviction is against the manifest weight of the evidence, great deference must be given to the fact finder's determination of witnesses' credibility. State v. Wright, 10th Dist. No. 03AP-470, 2004-Ohio-677, at ¶ 11. The policy underlying this presumption is that the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Id. Given this presumption and the evidence supporting appellant's convictions, we cannot conclude that appellant's convictions are against the weight of the evidence.
 {¶ 101} Thus, appellant's fourth assignment of error is without merit.
 {¶ 102} Appellant's sixth assignment of error states:
 {¶ 103} "Defendant-appellant was denied the effective assistance of counsel as guaranteed by the sixth and fourteenth amendments to the U.S. constitution and article 1, section X of the ohio constitution where his counsel failed to file a motion to suppress."
 {¶ 104} Appellant argues that his trial counsel was ineffective because he failed to file a motion to suppress alleging that the officers had no right to follow him into his building to arrest him. He contends that since such a motion to suppress would have been meritorious, his counsel was ineffective for failing to do so.
 {¶ 105} To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley
(1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. Second, appellant must demonstrate that he was prejudiced by counsel's performance. Id. To show that he has been prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different.Bradley, 42 Ohio St.3d at paragraph three of the syllabus.
 {¶ 106} Appellant bears the burden of proof on the issue of counsel's effectiveness. State v. Calhoun (1999), 86 Ohio St.3d 279, 289,714 N.E.2d 905. In Ohio, a licensed attorney is presumed competent. Id .
 {¶ 107} Here appellant alleges his counsel should have filed a motion to suppress alleging that his arrest was unlawful. The failure of trial counsel to file a motion to suppress does not per se constitute ineffective assistance of counsel. State v. Lester (1998),126 Ohio App.3d 1, 6, 709 N.E.2d 853. But the failure to file a suppression motion may constitute ineffective assistance of counsel where there is a solid possibility that the trial court would have suppressed the evidence. State v. Green, 7th Dist. No. 01-CA-54, 2003-Ohio-5442, at ¶ 9.
 {¶ 108} Given the discussion in appellant's second assignment of error regarding whether a motion to suppress would have been successful, appellant's counsel was not ineffective for failing to file such a motion. There is not a solid possibility that the motion would have been successful. As discussed above, regardless of whether the officers' entry into appellant's garage was lawful or not, this did not give appellant the right to assault the officers and resist his arrest. Evidence of crimes committed in the officers' presence is admissible.
 {¶ 109} Hence, appellant's sixth assignment of error is without merit.
 {¶ 110} For the reasons stated above, the trial court's decision is hereby affirmed.
Vukovich, J., concurs.
Waite, J., concurs.