[Cite as *State v. Kemper*, 2012-Ohio-5958.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2012-04-079 |
| | : | O P I N I O N |
| - vs - | | 12/17/2012 |
| | : | |
| DARRYL KEMPER, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY AREA II COURT
Case Nos. CRB0901051 and CRB0100022


Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Ty L. Foster, 30 Garfield Place, Suite 95, Cincinnati, Ohio 45202, for defendant-appellant


**PIPER, J.**

{¶ 1}   Defendant-appellant, Darryl Kemper, appeals his convictions and sentence in the Butler County Area II Court for assault and violation of a protection order.[1]

{¶ 2}   Kemper and Jamie Winters were in a relationship for approximately two years, and lived together as boyfriend and girlfriend until they broke up in October 2009.   On

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this case from the accelerated calendar and place it on the regular calendar for purposes of issuing this opinion.

November 11, 2009, Kemper returned to the home he once shared with Winters to retrieve his clothes and television. Kemper believed that he had Winters' permission to return for his clothes and television and asked his friend Antwonne Baker to accompany him. Once there, Winters did not allow Kemper to enter the home to retrieve his belongings.

{¶ 3} Winters testified that in order to gain entrance to the home, Kemper "shoved threw [sic] the door and shoved me." Once Kemper entered the home, Winters called 911 to report the incident and to ask for police assistance. Winters then went upstairs to the room where her two children were watching television, and Kemper followed her. Winters attempted to block Kemper from entering the room. Winters testified that in order to get into the room, Kemper "shoved me in my … trying to enter my bedroom * * *." Winters described the "shove" as Kemper putting his hands on her shoulders and moving her aside.

{¶ 4} After Kemper gained entrance to the bedroom, he attempted to retrieve his television, but Winters positioned herself between the television and Kemper. When Kemper managed to move the television, the cable box sitting on top of the television slid off and hit Winters in the head. Winters moved for and was granted a protection order against Kemper.

{¶ 5} Several months later, Winters called police to inform them that Kemper came to her house on March 9, 2010, but left when she instructed him to do so. Later the same day, Winters informed police that her house had been broken into and a set of her papers had been ransacked. Although Winters did not believe that Kemper actually broke into her home, she did believe that Kemper instigated the break-in and asked someone else to perform it because Kemper wanted access to a lease agreement he believed Winters had in her possession. Winters also complained that Kemper was harassing her on the telephone.

{¶ 6} Kemper was charged with assault by complaint which alleged that Kemper shoved Winters several times during an argument. Kemper was also charged with violating the protection order on two separate occasions and harassing Winters by telephone.

Kemper pled not guilty, and the matter was heard before a magistrate. The magistrate conducted a bench trial, at which Winters, Kemper, and Baker testified.

{¶ 7} The magistrate found Kemper guilty of one violation of the protection order and the assault charge, but not guilty on the phone harassment and the other charge of violating the protection order. The magistrate sentenced Kemper to a suspended jail sentence of 180 days, six months of probation, anger management, and a $150 fine and court costs for the assault charge. The magistrate sentenced Kemper to a $150 fine and court costs on the violating a protection order charge. Kemper filed objections to the magistrate's decision which the trial court overruled. Kemper now appeals his convictions and sentence, raising the following assignments of error:

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE MAGISTRATE ERRED IN OVERRULING THE RULE 29 MOTION FOR ACQUITTAL; AND THE MAGISTRATE AND TRIAL COURT ERRED IN FINDING THE DEFENDANT GUILTY BASED UPON INSUFFICIENT EVIDENCE.

{¶ 10} Kemper argues in his first assignment of error that the trial court erred in overruling his Civ.R 29 motion and that his assault conviction is not supported by sufficient evidence.

{¶ 11} Pursuant to Crim.R. 29(A), "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged * * *, if the evidence is insufficient to sustain a conviction of such offense or offenses." On review, "an appellate court 'will not reverse the trial court's judgment unless reasonable minds could only reach the conclusion that the evidence failed to prove all elements of the crime beyond a reasonable doubt.'" *State v. Adams,* 12th Dist. No. CA2006-07-160, 2007-Ohio-2583, ¶ 19, quoting *State v. Miley*, 114 Ohio App.3d 738, 742 (4th Dist.1996). In order to affirm the denial of a Crim.R. 29 motion,

- 3 -

we need only find that there was legally sufficient evidence to sustain the guilty verdict. *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997).

{¶ 12} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *State v. Wilson,* 12th Dist. No. CA2006-01-007, 2007-Ohio-2298. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, superseded on other grounds.

{¶ 13} Kemper was charged with assault in violation of R.C. 2903.13(A), which states that "no person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." According to R.C. 2901.22(B), "a person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." According to R.C. 2901.01(A)(3), "'physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration."

{¶ 14} Kemper's conviction for assault was premised upon what Winters described as a shove. According to her testimony, when Kemper came to the home to retrieve his property, he "shoved threw [sic] the door and shoved me." She later testified that Kemper "shoved past" her in order to enter the house. On cross-examination, the following exchange occurred when defense counsel asked Winters to better explain the initial shove.

[Q] * * * how did that happen?

[A] He shoved me upon entry to the house…

[Q] he shoved you how?

* * *

[A]  He shoved me to gain entry, shoved me out of the way.

[Q]  So you were standing in the doorway and he shoved you aside?

[A]  Yes sir.

[Q]  Okay.  On the shoulders?

[A]  Yes.

{¶ 15} When Winters referenced being near the upstairs bedroom, she testified that "he shoved me in my… trying to enter my bedroom where my children were."  On cross-examination, Winters confirmed that Kemper "did the same thing, he put his hands on [her] shoulders and flipped [her] aside."  Winters also confirmed that Kemper did not shove her into the walls, only that he moved her aside.  When asked whether she received injuries or bruising from the shoves, Winters began discussing the cable box incident, but did not state whether she sustained any physical harm specific to the shoves.

{¶ 16} This court has previously held that a shove may satisfy the physical harm element of assault.  *State v. Kelly*, 12th Dist. No. CA2001-12-104, 2002-Ohio-5886, ¶ 24.  However, we were also careful to indicate that the shove must be paired with the requisite intent in order to constitute assault.  In *Kelly*, the evidence demonstrated that the appellant had committed assault because he physically attacked the victim to the point that her "eyes were bruising and blued, she had some dried blood on her lips, her lips were swollen, she had several marks, redness, abrasions around her face and in her neck and in her lower neck and upper chest area * * *."  *Id.* at ¶ 25.  Here, however, the circumstances differ significantly.

{¶ 17} A description of the events reveals Kemper attempting to retrieve his possessions with Winters attempting to prevent Kemper from doing so.  While it is clear that

Kemper intended to gain possession of items he believed to be his and that the moment was heated between himself and Winters, evidence is lacking to establish beyond a reasonable doubt that Kemper had the requisite mens rea to harm Winters. Stated a different way, there is insufficient evidence to establish that Kemper was aware that placing his hands on Winters' shoulder to move her aside would probably cause a certain result, mainly physical harm.

{¶ 18} The prosecutor asked Winters whether Kemper harmed her, and Winters explained the incident involving the cable box. However, and when asked on cross-examination if Kemper had thrown the cable box at her, she replied "no" and confirmed that it had fallen from the television.

{¶ 19} Even when construing this evidence in a light most favorable to the prosecution, we cannot say that there is sufficient evidence to support the assault conviction. The complaint stated that the assault was a result of the shoves, the magistrate's adopted findings of facts and conclusions of law make the assault specific to the shoving, and the trial court's decision overruling Kemper's objections to the magistrate's decision also cites the shoving as the sole basis for the assault. However, there is no indication from Winters (or in any of the submitted evidence) that Kemper knowingly caused or attempted to cause physical harm when he placed his hands on Winters' shoulders to move her out of the way in order to retrieve items him the residence.

{¶ 20} There is no indication that as a result of the "shoves" Kemper was intending to harm, or that Kemper intended to attempt to cause Winters physical harm by moving her aside. The officer who issued the summons stated in the narrative supplement that "there were no injuries to either party," and this finding is consistent with the testimony adduced at

trial.[2] When asked what physical harm she suffered as a result of the shoving, Winters did not indicate that she suffered any physical harm, and instead began discussing the cable box incident.

{¶ 21} Even if we were to consider the cable box hitting Winters' head as a possible assault, there is insufficient evidence to prove beyond a reasonable doubt that Kemper *knowingly* caused physical harm or attempted to cause physical harm by moving the television. Kemper testified that he did not know that by moving the television, the cable box would fall off and hit Winters in the head. Furthermore, Winters testified that Kemper did not throw the cable box, and that instead, it slid off of the television when Kemper picked it up to retrieve his property. Even when viewed in a light most favorable to the prosecution, we are unable to say that the evidence is sufficient to prove beyond a reasonable doubt that Kemper assaulted Winters by moving the television.

{¶ 22} Kemper's first assignment of error is therefore sustained, his conviction is reversed and vacated, and Kemper is discharged as it relates to the assault charge.

{¶ 23} Assignment of Error No. 2:

{¶ 24} THE FINDING OF A VIOLATION OF A TEMPORARY PROTECTION ORDER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 25} Kemper argues in his second assignment of error that his conviction for violating a protection order was against the manifest weight of the evidence.

{¶ 26} While the test for sufficiency requires an appellate court to determine whether the state has met its burden of production at trial, a manifest weight challenge examines the inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other. *Wilson*, 2007-Ohio-2298.

---

2. Winters admitted during her testimony that she also shoved Kemper during the incident, and such was reported to police.

> In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Cummings*, 12th Dist. No. CA2006-09-224, 2007-Ohio-4970, ¶ 12.

{¶ 27} While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, "these issues are primarily matters for the trier of fact to decide since the trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given the evidence." *State v. Walker*, 12th Dist. No. CA2006-04-085, 2007-Ohio-911, ¶ 26. Therefore, an appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances to correct a manifest miscarriage of justice, and only when the evidence presented at trial weighs heavily in favor of acquittal. *Thompkins*, 78 Ohio St.3d at 387.

{¶ 28} Kemper was charged with violating a protection order in violation of R.C. 2919.27. According to the protection order in place, Kemper was ordered not to be within two city blocks of Winters, and could not initiate any contact with her. The court heard testimony from Winters that Kemper came to her home during the early morning hours of March 9, 2010, and that he came close enough to the house that she could see him through the window of her front door. Winters testified that Kemper did not leave her house until she told him to do so and threatened to call the police.

{¶ 29} The court found credible Winters' testimony that Kemper was within two city blocks of her and that he made contact with her, thus violating the protection order. After reviewing the record, we cannot say that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Kemper's second assignment is therefore overruled.

{¶ 30} Assignment of Error No. 3:

{¶ 31} A TRIAL TO MAGISTRATE ON MISDEMEANORS OF THE FIRST DEGREE MUST BE DONE ONLY BY CONSENT OF ALL PARTIES.

{¶ 32} Kemper argues in his final assignment of error that the magistrate lacked authority to hear his case because he did not consent to the magistrate having jurisdiction.

{¶ 33} According to Crim.R. 19(C)(1)(h), a magistrate has the authority to "conduct the trial of any misdemeanor case that will not be tried to a jury. If the offense charged is an offense for which imprisonment is a possible penalty, the matter may be referred only with unanimous consent of the parties in writing or on the record in open court." Since the charges against Kemper carried the possibility of imprisonment, both parties had to consent in writing before a magistrate could conduct the trial.

{¶ 34} While Kemper argues that he did not give written consent, the record indicates otherwise. The record contains a written document, captioned "**CONSENT TO HAVING MAGISTRATE HEAR CASE**." (Emphasis in original.) Kemper initialed under a section, which stated, "I have been informed that I am charged with a: misdemeanor of the first degree; conviction could result in a maximum of 180 days confinement and a maximum fine of $1,000.00." The form also set forth several rights and the effect of waiving the right to a jury trial. The form then concluded, "with full knowledge of my rights as set forth above, I hereby consent to having my case heard by a magistrate. I acknowledge that I am giving this consent knowingly, intelligently and voluntarily without coercion or promise of any special consideration made to me to give this consent." Kemper and the prosecutor signed the form, thereby constituting written consent by both parties to have the case heard by the magistrate.

{¶ 35} Kemper now argues that he did not voluntarily sign the consent form, but signed the form after being instructed to do so by the magistrate. However, the record contains the signed consent form and no other indication that Kemper signed the form only

- 9 -

because the magistrate instructed him to do so. Moreover, Kemper was represented by counsel, and did not object to the magistrate hearing the case until he filed objections after the magistrate had already reached a decision. Had Kemper not wanted to have his case decided by the magistrate, or had Kemper signed the consent form only because the magistrate instructed him to do so, he would have had the opportunity to challenge the magistrate's authority to hear the case according to Crim.R. 19 before the magistrate heard the case. He did not, and instead, proceeded to trial with the magistrate presiding. Kemper's third assignment of error is overruled.

{¶ 36} Judgment affirmed in part and reversed in part. Kemper's conviction and sentence is reversed and vacated insofar as the assault conviction, and Kemper is hereby discharged on that offense. Kemper's conviction for violating a protection order is affirmed.

HENDRICKSON, P.J., concurs.

YOUNG, J., concurs in part and dissents in part.

**YOUNG, J., concurring in part and dissenting in part.**

{¶ 37} I concur in the majority's ruling on Kemper's second and third assignments of error. I, however, respectfully disagree with the majority's reversal of Kemper's assault conviction under his first assignment of error.

{¶ 38} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is "to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Smith*, 80 Ohio St.3d 89, 113 (1997). After viewing the evidence in a light most favorable to the prosecution, the relevant inquiry is whether any rational trier of fact could have found the essential elements of the crime proven beyond a

reasonable doubt. *Id.* at 113.

{¶ 39} Kemper was convicted of assault in violation of R.C. 2903.13(A), which prohibits one from knowingly causing or attempting to cause physical harm to another. Under R.C. 2901.22(B), "a person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." A defendant's state of mind may be inferred from the totality of the surrounding circumstances. *See In re Pollitt*, 4th Dist. No. 00 CA 687, 2000 WL 1528663 (Oct. 10, 2000).

{¶ 40} At trial, the state presented evidence that following their hostile separation, Kemper went to Winters' home, uninvited, to retrieve his belongings. After unsuccessfully trying to enter the home through the front door, Kemper forced his way through the back door and "shoved in through the back door." Kemper then shoved Winters to the side to gain entry into the home. Winters started screaming at him to leave the premises, called 911, and went upstairs to her bedroom where her children were watching television. Kemper followed her and once again, shoved her to the side to gain entry into the bedroom to retrieve the television. Twice, Winters stood in a doorway to keep Kemper out. Twice, Kemper shoved her to the side specifically to gain entry into two different places (and to eventually gain access to specific items such as the television).

{¶ 41} The testimony indicates Winters did not suffer injury from the shoves except when the cable box accidentally hit her in the head. However, R.C. 2903.13(A) does not require the state to prove that a victim has sustained actual injury since a defendant can be convicted of assault for merely attempting to cause physical harm to another. The magistrate and the trial court both found that given the circumstances surrounding the incident, Kemper's act of shoving Winters constituted assault.

**{¶ 42}** I agree with the analysis and findings of the magistrate and trial court. As the majority noted, the moment between the parties was heated. Further, the evidence shows Kemper's animus was directed at Winters. Viewing the evidence in a light most favorable to the prosecution, I find that a rational trier of fact could find that the elements of assault were proven beyond a reasonable doubt. *See Pollitt*, 2000 WL 1528663 (finding sufficient evidence to support a delinquency adjudication based on assault where the juvenile pushed or shoved a teacher and where the totality of the circumstances demonstrated that the juvenile intended to push the teacher out of the juvenile's way). Because Kemper's assault conviction is supported by sufficient evidence, I respectfully dissent from that portion of the majority decision.

Young, J., retired, of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution.