OPINION
{¶ 1} Appellant, Maurice Varner, appeals the August 22, 2002 judgment entry of the Ashtabula County Court of Common Pleas, in which he was convicted of assault and sentenced to prison.
 {¶ 2} On February 21, 2002, appellant was indicted on one count of assault, in violation of R.C. 2903.13(A) and (C)(2), a felony of the fifth degree. Appellant allegedly assaulted a correctional officer at the Lake Erie Correctional Institution ("LECI") while the officer was on duty and while appellant was incarcerated. The indictment also named three co-defendants. At the arraignment, appellant entered a plea of not guilty.
 {¶ 3} On May 14, 2002, prior to the trial, appellant filed a motion to sever. In that motion, he requested that his single assault charge be tried separately from the more serious charges facing two of his co-defendants, Orlando and Emanuel Shepherd ("the Shepherds"). Appellant reasoned that he might be prejudiced by a joint trial with the Shepherds. On June 13, 2002, the trial court granted appellant's motion to sever regarding the Shepherds. However, the trial court stated that the case would be joined with and tried together with appellant's other co-defendant, Ryan Lester ("Lester").
 {¶ 4} On August 20, 2002, a jury trial commenced which revealed that on November 5, 2001, around 1:30 p.m., while Sergeant Jeremiah J. Thomas ("Sergeant Thomas") was performing his duties as a corrections officer at LECI, he heard a distress call over the radio from Officer Fields. In response to the call, Sergeant Thomas ran toward Officer Fields and observed two inmates, the Shepherds, attacking Officer Fields. Sergeant Thomas approximated that there were two hundred fifty to three hundred inmates in the yard at the time. He yelled for the Shepherds to comply, and they ceased their attack. According to Sergeant Thomas, there was a "wall of inmates * * * closing in on [them]."
 {¶ 5} Sergeant Thomas related that two other inmates, one of whom was appellant and the other, who was Lester, stuck out in his mind because they were walking toward him with angry looks and clenched fists. Officer Danny Howell ("Officer Howell") made this same observation.[1] Sergeant Thomas ordered appellant and Lester to move back, but they ignored his verbal commands. Once appellant was within arm's distance, "he swung with his right arm, attempt[ing] to strike [Sergeant Thomas] in the face[,]" but appellant missed. Officer Howell also witnessed appellant take a "closed fist swing" at Sergeant Thomas. Sergeant Thomas testified that he was "shocked" because he "honestly did not expect that to happen." He explained that if he had not stepped back, appellant's punch would have hit him in the face.
 {¶ 6} After appellant swung, Sergeant Thomas proceeded to grab his arm. As he was grabbing appellant's arm, Lester snatched Sergeant Thomas's jacket and started pushing him. Officer Howell intervened and took Lester to the ground. While Sergeant Thomas was holding appellant, Lieutenant Darryl Thomas ("Lieutenant Thomas") broke in between them and pushed appellant away and told him to go back to his housing unit. Appellant ran back to his unit where he was later located and apprehended.
 {¶ 7} The warden at LECI, Richard Gansheimer ("Gansheimer"), related that he heard the call for assistance from Officer Fields. Gansheimer witnessed appellant take a swing at Sergeant Thomas, but he did not see anyone try to punch appellant. He further stated that none of the corrections officers were armed with weapons.
 {¶ 8} At the close of the state's case-in-chief, appellant moved for a Crim.R. 29 motion for acquittal, which the trial court overruled. Appellant presented its case.
 {¶ 9} Lieutenant Thomas was called as a witness by appellant. He stated that he got between Sergeant Thomas and appellant, and he told appellant "get back to your dorm. You don't want any more charges." Appellant then left the area. Lieutenant Thomas related that he did not see appellant or any other inmate take a swing or try to punch Sergeant Thomas. He revealed that he did not see any corrections officers pummeling inmates. Lieutenant Thomas also indicated that he saw Sergeant Thomas "locked up" with an African American inmate, but he did not know what occurred prior to the two of them being "locked up" together because he "was looking all different ways."
 {¶ 10} Delbert Juan Richmond ("Richmond") took the stand and related that he was an inmate at LECI when the incident occurred. He was bunk-mates with appellant. According to Richmond, he witnessed the entire incident, and he did not see appellant take a swing at any corrections officer.
 {¶ 11} At the close of appellant's case, appellant renewed his Crim.R. 29 motion for acquittal, which again was overruled. The jury returned with a guilty verdict.
 {¶ 12} In an entry dated August 22, 2002, the trial court ordered that appellant serve a term of ten months in the Lorain Correctional Institution, to be served consecutively to the sentence that appellant was already serving. Appellant timely filed the instant appeal and now advances the following assignments of error:
 {¶ 13} "[1.] The trial court erred to the prejudice of appellant by denying appellant's motion for acquittal under Crim.R. 29 at the close of the state's case-in-chief and at the close of all evidence.
 {¶ 14} "[2.] The trial court erred to the prejudice of appellant by refusing to include appellant's requested instruction on R.C. 9.06, by instructing the jury that the LECI is a state correctional institution, and by changing the statutorily mandated language of R.C. 2903.13(C)(2)(A) in the instructions and the verdict form.
 {¶ 15} "[3.] The jury's verdict was against the manifest weight of the evidence.
 {¶ 16} "[4.] The state failed to present sufficient evidence to prove all of the elements of felony assault beyond a reasonable doubt.
 {¶ 17} "[5.] The trial court erred to the prejudice of appellant by imposing a sentence consecutive to the sentence being served by appellant without making the requisite findings on the record and the record did not support the consecutive sentence.
 {¶ 18} "[6.] Prosecutorial misconduct in the improper joinder of trial, examination of witnesses, and in the opening statement and closing argument deprived appellant of a fair trial."
 {¶ 19} Appellant's first, third and fourth assignments of error are interrelated and will be addressed in a consolidated fashion. In the first assignment of error, appellant asserts that the trial court erred by denying his motion for acquittal. Specifically, appellant argues that when an assault occurs at a privately run prison and involves a victim not employed by the prison, the felony enhancement provision is not applicable. Further, appellant contends that when an assault by an inmate occurs at a privately run prison, the state must prove beyond a reasonable doubt that the prison is being operated pursuant to a contract which fully complies with R.C. 9.06 in order for the felony enhancement provision to apply. For the third assignment of error, appellant alleges that the jury's verdict was against the manifest weight of the evidence. Under the fourth assignment of error, appellant posits that the state failed to present sufficient evidence to prove all of the elements of felony assault beyond a reasonable doubt.
 {¶ 20} Preliminarily, we note that this court has held that "any offense `that would be a crime if committed at a state correctional institution (* * *) shall be a crime if committed by or with regard to inmates at facilities operated pursuant to a contract entered into under R.C. 9.06.' R.C. 9.06(G). Therefore, based on R.C. 9.06, the assault on [a corrections officer] at the Lake Erie Correctional Institution was to be treated as an assault on a corrections officer of a state correctional facility." State v. Johnson, 11th Dist. No. 2001-A-0043, 2002-Ohio-6570, at ¶ 20.
 {¶ 21} The Supreme Court of Ohio established the test for determining whether a motion for acquittal is properly denied inState v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus.Bridgeman states that "[p]ursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."
 {¶ 22} Hence, when an appellant makes a Crim.R. 29 motion, he is challenging the sufficiency of the evidence introduced by the state. As this court stated in State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 WL 738452, at 4-5:
 {¶ 23} "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented.
 {¶ 24} "`"(* * *) (T)he test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claimof insufficient evidence invokes an inquiry about due process. Itraises a question of law, the resolution of which does not allowthe court to weigh the evidence. * * *"'
 {¶ 25} "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence `in a light most favorable to the prosecution,' * * * `(a) reviewing court (should) not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.' * * *" (Emphasis sic.) (Citations omitted.)
 {¶ 26} This court must look to the evidence presented to decide whether the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt.State v. March (July 16, 1999), 11th Dist. No. 98-L-065, 1999 WL 535675, at 3. The evidence is to be viewed in a light most favorable to the prosecution. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. The verdict will not be disturbed on appeal unless this court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. State v. Dennis (1997), 79 Ohio St.3d 421, 430.
 {¶ 27} Appellant was indicted under R.C. 2903.13 which states: "(A) No person shall knowingly cause or attempt to cause physical harm to another * * *. (C)(2) If the offense is committed in any of the following circumstances, assault is a felony of the fifth degree: (a) The offense occurs in or on the grounds of a state correctional institution * * *, the victim of the offense is an employee of the department of rehabilitation and correction, * * * and the offense is committed by a person incarcerated in the state correctional institution * * *."
 {¶ 28} The record before us reveals evidence which would allow any rational trier of fact to find all the essential elements of assault beyond a reasonable doubt. The evidence revealed that on November 5, 2001, appellant was incarcerated at LECI, a state correctional institution. There was testimony from Sergeant Thomas and Officer Howell that appellant knowingly attempted to cause physical harm to Sergeant Thomas by taking a swing toward his face. The incident occurred on the grounds at LECI while Sergeant Thomas was performing his duties as a corrections officer. Gansheimer also testified that he saw an inmate take a swing at Sergeant Thomas.
 {¶ 29} Even though there were no injuries to Sergeant Thomas, we conclude that appellant acted knowingly, regardless of his purpose, because he should have known that attempting to strike Sergeant Thomas, a corrections officer, could result in serious injury. Therefore, we conclude that after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have determined beyond a reasonable doubt that appellant assaulted Sergeant Thomas. Appellant's conviction was supported by sufficient evidence with respect to the first and fourth assignments of error.
 {¶ 30} Moreover, although evidence may be adequate to sustain a guilty verdict, the issue of manifest weight requires a different type of analysis. Schlee, supra, at 4-5. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. A reviewing court, when addressing whether a verdict is against the manifest weight of the evidence, reviews "`the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * *'" State v. Davis
(1988), 49 Ohio App.3d 109, 113.
 {¶ 31} In the case at bar, there was competent, credible evidence presented by the state at the trial to support the conviction and demonstrate that appellant knowingly attempted to cause physical harm to Sergeant Thomas. The character of this evidence was not incredible, and the jury did not lose its way. There was ample direct evidence presented by Sergeant Thomas, Officer Howell, and Gansheimer, that appellant swung at Sergeant Thomas. The trier of fact found the state's witnesses to be more credible than appellant's witnesses. Thus, the trier of fact could reasonably conclude that appellant committed an assault. The verdict was not against the manifest weight of the evidence. Since the evidence introduced at trial was sufficient as a matter of law, and the conviction was not against the manifest weight of the evidence, we affirm appellant's conviction. Accordingly, appellant's third assignment of error also lacks merit.
 {¶ 32} In the second assignment of error, appellant contends that the trial court erred by refusing to include appellant's requested instruction on R.C. 9.06, by instructing the jury that LECI is a state correctional institution, and by changing the statutorily mandated language of R.C. 2903.13(C)(2)(A) in the instruction and the verdict form.
 {¶ 33} A court's instructions to the jury should be addressed to the actual issues in the case as posited by the evidence and the pleadings. State v. Guster (1981), 66 Ohio St.2d 266, 271. The decision to issue a particular jury instruction rests within the sound discretion of the trial court. Johnson, supra, at ¶ 24. Hence, this court will not reverse the trial court's decision to give a certain jury instruction unless there is an abuse of discretion. Id. An abuse of discretion connotes more than an error of law or judgment; instead, it implies that the trial court's attitude was unreasonable, arbitrary, or capricious.State v. Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 34} Here, appellant requested an instruction pertaining to R.C. 9.06. The trial court stated that the defense asked the court to "instruct the Jury that if the State failed to prove that the contract under which [LECI] is being operated fails to comply with all the requirements of the Ohio Revised Code, then they should find [appellant] not guilty." However, the trial court explained that that would be "an improper instruction." The trial court stated that "[i]t's not a question of fact as to whether or not [LECI] is a state correctional institution just because it's run privately under contract. That is not a question of fact. It's a question of law. That's why I told them [the jury] that [LECI] is a state institution. They [the jury] still have to find whether this offense occurred there and whether the victim was an employee, whether [appellant] was incarcerated."
 {¶ 35} It is our view that the trial court did not abuse its discretion in its instructions to the jury. Further, we conclude that the trial court did not err in not giving the requested instruction as to R.C. 9.06. Accordingly, appellant's second assignment of error is without merit.
 {¶ 36} Under assignment of error number five, appellant argues that the trial court erred by imposing a consecutive sentence to the sentence being served by appellant without making the requisite findings on the record and that the record did not support the consecutive sentence.
 {¶ 37} Under R.C. 2953.08, our review of a felony sentence is de novo. State v. Raphael (Mar. 24, 2000), 11th Dist. No. 98-L-262, 2000 WL 306776, at 2. However, this court will not disturb appellant's sentence unless we find, by clear and convincing evidence, that the record does not support the sentence or that the sentence is otherwise contrary to law.State v. Thomas (July 16, 1999), 11th Dist. No. 98-L-074, 1999 WL 535272, at 4, quoting State v. Rose (Sept. 15, 1997), 12th Dist. No. CA96-11-106, 1997 WL 570695, at 5. Clear and convincing evidence is that evidence which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Thomas at 4.
 {¶ 38} When imposing consecutive sentences, the trial court must first determine that consecutive sentences are "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[.]" R.C. 2929.14(E)(4). Next, the trial court must find that one of the following factors listed in R.C. 2929.14(E)(4) is also present: "(a) that the offender was awaiting trial or sentencing or was under community control sanctions; (b) that the harm caused by the offenses was so great that a single prison term would not adequately reflect the severity of the conduct; or (c) that the offender's prior criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime." State v.Norwood (June 8, 2001), 11th Dist. No. 2000-L-072, 2001 WL 635951, at 4.
 {¶ 39} The court must also follow the requirements set forth in R.C. 2929.19(B) when sentencing an offender to consecutive sentences under R.C. 2929.14. State v. Hoskins (Mar. 16, 2001), 11th Dist. No. 2000-A-0037, 2001 WL 276935, at 3. R.C.2929.19(B)(2)(c) requires that the trial court justify its imposition of consecutive sentences by making findings that gives the court's reasons for selecting that particular sentence.
 {¶ 40} The Supreme Court has held that when ordering a defendant to serve consecutive sentences, the trial court must make its statutorily required findings at the sentencing hearing.State v. Comer, 99 Ohio St.3d 463, paragraph one of the syllabus.
 {¶ 41} At the sentencing hearing, the trial court stated the following:
 {¶ 42} "* * * [C]onsecutive sentences are necessary in order to protect the public from future crime by [appellant] or others; and, more importantly, to punish the offender.
 {¶ 43} "* * *
 {¶ 44} "Court also finds that consecutive sentences are not disproportionate to the seriousness of the offender's conduct or to the danger the offender opposes to the public. * * * The original situation wasn't caused by [appellant], but his actions certainly caused a grave risk that the whole situation was going to be controlled by the uncontrolled situation of the correction staff that was available.
 {¶ 45} "So the Court finds that consecutive sentences are not disproportionate and are necessary in order to enforce any sort of punishment when a person is serving a felony sentence at the time.
 {¶ 46} "The Court also finds that [appellant] was under a community sanction at the time in that he was serving a felony prison sentence, and the Court finds that [appellant's] criminal history demonstrates the consecutive sentence is necessary in order to protect the public from future crime."
 {¶ 47} Based on the foregoing colloquy, it is our view that the trial court did not err in imposing consecutive sentences. Appellant's fifth assignment of error has no merit.
 {¶ 48} In appellant's sixth and final assignment of error, he claims that there was prosecutorial misconduct in the improper joinder of trial, the examination of witnesses, and in the opening statement and closing arguments which deprived him of a fair trial.
 {¶ 49} In reviewing a claim of prosecutorial misconduct, we must examine whether the prosecutor's actions were improper, and whether the conduct so prejudiced the defendant as to deprive him of a fair trial. State v. Loza (1994), 71 Ohio St.3d 61, 78;State v. Lott (1990), 51 Ohio St.3d 160, 165. Misconduct, if it exists, is evaluated within the context of the entire trial.State v. Keenan (1993), 66 Ohio St.3d 402, 410.
 {¶ 50} Appellant alleges that even though the Shepherds were severed from the trial, the prosecutor violated the in limine ruling by introducing evidence about the Shepherds throughout the trial. After reviewing the evidence presented at trial, it is our view that information regarding the Shepherds was introduced to place the events into context that led up to appellant's indictment. The testimony regarding the Shepherds merely demonstrated how the situation arose, what the staff at the prison was responding to, and how serious the situation could have become. Therefore, it is our position that appellant was not deprived of a fair trial by the limited amount of testimony dealing with the Shepherds.
 {¶ 51} Furthermore, appellant argues that his joint trial with Lester constituted prosecutorial misconduct. However, when appellant filed his motion to sever, he requested that his assault charge be tried separately from the more serious charges facing the Shepherds. Nowhere in that motion did appellant request that his case be tried separately from Lester. Hence, this issue should have been presented before the trial court. It is well-settled law that issues not raised in the trial court may not be raised for the first time on appeal because such issues are deemed waived. State v. Comen (1990), 50 Ohio St.3d 206,211. See, also, State v. Molk, 11th Dist. No. 2001-L-146, 2002-Ohio-6926, at ¶ 11. Since the issue regarding the joinder of Lester was not presented to the trial court, it is waived for purposes of appeal. Nonetheless, even if appellant would have raised the issue to the trial court, we conclude that there was no error in trying Lester jointly with appellant. Further, appellant was not denied a fair trial. Appellant's sixth assignment of error is not well-founded.
 {¶ 52} For the foregoing reasons, appellant's first, second, third, fourth, fifth and sixth assignments of error are not well-taken. Therefore, the judgment of Ashtabula County Court of Common Pleas is affirmed.
Grendell, J., Rice, J., concur.
[1] The identification of appellant came from Officer Howell, who was standing next to Sergeant Thomas. Sergeant Thomas later identified appellant as the individual who swung at him.