[Cite as *State v. Buchar*, 2017-Ohio-7601.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 2017AP010003 |
| | : | |
| BRADLEY D. BUCHAR | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:             Appeal from the Tuscarawas
                                     County Court, Case No. 16 CRB
                                     0038


JUDGMENT:                            AFFIRMED


DATE OF JUDGMENT ENTRY:              September 11, 2017


APPEARANCES:

For Plaintiff-Appellee:                  For Defendant-Appellant:

ROBERT R. STEPHENSON II                  DAN GUINN
206 West High Ave.                       P.O. Box 804
New Philadelphia, OH 44663               New Philadelphia, OH 44663

*Delaney, P.J.*

{¶1} Appellant Bradley D. Buchar appeals from the judgment entries of conviction and sentence entered in the Tuscarawas County Court on July 27, 2016 and November 15, 2016. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} This case arose on January 21, 2016, around 3:00 p.m., when appellant confronted Joshua L. Smith about Smith's alleged taunts of "revving" an engine at him and "giving [him] the finger" as Smith drove past appellant.

{¶3} Appellant and Smith have a purported history of "bad blood" between their families but until this incident no police intervention was required. Smith was employed as a laborer by the Newcomerstown Water Department and drove a department truck, accompanied by his coworker Allen Davis in the passenger seat. The two were en route to an address on Ray Street to shut off a resident's water.

{¶4} Appellant, in the meantime, was in the parking lot of the Duke Gas Station putting air in his tires. "The Duke" is at the corner of Ray Street and State Street. Appellant observed Smith and Davis drive by, and heard the engine of the water truck "rev" as it went around the corner. Appellant perceived the "revving" to be a threat directed at him. Appellant also said Smith "gave [him] the finger."

{¶5} Moments later Smith was at work at the residence on Ray Street with a "water key," a large tool placed in a hole in the ground. Davis was seated inside the truck with the passenger door open. Appellant quickly pulled up in his Suburban, onto the resident's grass, jumped out, and yelled profanities at Smith. He threatened to break Smith's jaw. Appellant raised his elbow at Smith as if to

strike him and Smith moved back. According to Smith and Davis, appellant then "chest bumped" Smith, got back into his Suburban, and took off.

{¶6} At trial, Smith admitted he "revved" the engine as he went around the corner by the Duke to provoke appellant, but denied giving him the finger. Smith and Davis said appellant "stormed" down the road toward them and pulled onto the customer's grass. When confronted by appellant, Smith said he "just stood there" with the water key in his hands. Appellant swung at Smith but didn't make contact because Smith moved back. He described the only actual physical contact between the two as a chest bump.

{¶7} Davis confirmed appellant was "in Smith's face," calling him names and using profanity, and Smith backed away when appellant swung at him. Davis also witnessed the "chest bump."

{¶8} Ptl. John Gray reported to the Ray Street address to investigate. He took statements from Smith and Davis and learned a possible assault occurred. The next day he went to appellant's house to get his side of the story. When asked if he knew why Gray was there, appellant responded, "Because of [Smith]?" Gray advised appellant of Smith's assault complaint and appellant responded he "wasn't going to deny anything." Appellant admitted he swung his elbow at Smith and threatened to break his jaw, although he claimed this was a conditional threat "if Smith came to his house."

{¶9} Gray went to a business across Ray Street from the residence and obtained a video of the incident, entered as appellee's Exhibit A. In Gray's estimation, the video confirmed Smith's story and clearly depicted appellant

swinging at Smith, which Gray determined to be an assault. Some of the interaction on the video is blocked by the water truck and the chest bump is not apparent on the video.

{¶10} At trial, two witnesses testified on appellant's behalf about the "history" between appellant and Smith, and claimed Smith and Davis have threatened appellant at times. The witnesses were not present during the incident on January 21, and one witness acknowledged threats were made by appellant as well.

{¶11} Appellant testified on his own behalf. He stated he was filling his tire when he heard "revving" and looked up to see Smith giving him the "evil eye" and a "hand gesture." Appellant finished filling his tire and then "decided to talk to these guys," acknowledging he went to the house where they were working and pulled onto the curb.

{¶12} Appellant testified as follows in pertinent part:

> * * * *.

> [Appellant]: When I looked up to see what the [revving] was [Smith] was staring at me and giving me the evil eye and had his hand gestured toward me. I just shook my head and thought seriously, more of this? I finished filling up the air in my tires and as I was proceeding to leave I was facing the direction where they were sitting so instead of backing out onto State Street I just proceeded down there and I thought well, you know what, I'm going to stop and talk to these guys.

[Defense counsel:] What did you do?

[Appellant]: I pulled up on the curb so I wouldn't impede traffic. [Smith] was in front of the truck as he stated, as [Davis] stated, with a tool in the ground turning on the water. [Davis] was sitting in the truck with the door open which means [Smith] was here in front of the truck, [Davis] was sitting in the truck and I was behind the truck. I asked him, I said, "Listen, you fat motherfucker. Do you want some of me? Don't fuck around with me on the job. I will bust your fucking jaw if you come to my house and pull this shit." And he says, "You better get out of here," and I did. I did make a motion. I stood in front of him.

[Defense counsel]: Show the Court what you did.

[Appellant]: And I went like this. I said "I will break your jaw for you if you come to my house and pull this shit." I did not make any motion to harm him then or there. I told him if they continue this come to my house and I will do something about it.

* * * *.

T. 52-53.

{¶13} Appellant was charged by criminal complaint with one count of assault pursuant to R.C. 2903.13(A), a misdemeanor of the first degree, and appellant entered a plea of not guilty. A criminal protection order was issued on behalf Smith and against appellant pursuant to R.C. 2903.213.

{¶14} The matter proceeded to bench trial before a magistrate on July 13, 2016, and the magistrate found appellant guilty as charged by judgment entry dated July 27, 2016.  Appellant objected to the magistrate's decision on October 17, 2016 but the trial court adopted the magistrate's findings and conclusions pursuant to a judgment entry dated November 16, 2016.  On December 16, 2016, the trial court imposed sentence upon appellant as follows: a fine of $250 and court costs in addition to 30 days in jail with all 30 suspended on certain conditions.

{¶15} Appellant now appeals from the judgment entries of his conviction and sentence.

{¶16} Appellant raises one assignment of error:

**ASSIGNMENT OF ERROR**

{¶17} "APPELLANT'S CONVICTION FOR ASSAULT PURSUANT TO R.C. 2903.13(A) WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**ANALYSIS**

{¶18} In his sole assignment of error, appellant asserts his conviction upon one count of assault is against the manifest weight of the evidence.  We disagree.

{¶19} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997–Ohio–52, 678 N.E.2d

541. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." Id. A manifest-weight challenge "concerns 'the inclination of the *greater amount of credible evidence* * * * to support one side of the issue rather than the other.'" (Emphasis sic.) *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 75, reconsideration granted in part*, 147 Ohio St.3d 1438, 2016-Ohio-7677, 63 N.E.3d 157, citing *Thompkins,* supra, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

{¶20} R.C. 2903.13(A), assault, states, "No person shall knowingly cause or attempt to cause physical harm to another * * *." Appellant argues his conviction is against the manifest weight of the evidence for three reasons: the testimony of Smith and Davis was "inconsistent;" appellant did not knowingly attempt to cause physical harm; and the distance between appellant and Smith established the "arm swing" could not have been an attempt to cause physical harm.

{¶21} Appellant cites several minor examples of inconsistencies in the testimony of Smith and Davis. As to any perceived inconsistencies in the testimony of Smith and Davis, the weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 231, 2002–Ohio–2126, 767 N.E.2d 216, ¶ 79. None of these inconsistencies go to the manifest weight of the evidence, however, especially in light of the corroboration of the basic facts by Ptl. Gray, the video of the incident, and appellant's own testimony. The factfinder, in this case the magistrate, was free to

accept or reject any and all of the evidence offered by the parties and assess the witnesses' credibility. "While the [factfinder] may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. McGregor,* 5th Dist. Ashland No. 15–COA–023, 2016–Ohio–3082, ¶ 10, citing *State v. Craig,* 10th Dist. Franklin No. 99AP–739, unreported, 2000 WL 297252 (Mar. 23, 2000). The factfinder need not believe all of a witness' testimony, but may accept only portions of it as true. Id. Our review of the entire record reveals no significant inconsistencies or other conflicts in appellee's evidence that would demonstrate a lack of credibility of appellee's witnesses. *State v. Sanders*, 5th Dist. Ashland No. 15–COA–33, 2016–Ohio–7204, 76 N.E.3d 468, ¶ 41.

{¶22} As the trial court pointed out, the video is not definitive but we find it to be compelling: a figure is seen at work near a white truck when a Suburban pulls up abruptly, into the yard, and a second figure in a light-colored shirt quickly emerges from the truck. The second figure, appellant, is visibly agitated and gesticulating; the raised-arm gesture described as a "swing" is apparent. It is true the video does not establish how close the assailant was to the victim. Nevertheless, the video is an additional piece of credible evidence supporting the testimony of Smith and Davis. We also note when Ptl. Gray questioned appellant about the assault, appellant acknowledged that he knew why Gray sought him out, and appellant admitted swinging at Smith. Appellant has not shown that "a miscarriage of justice" occurred or that the finder of fact "lost its way" in finding him guilty of assault due to any inconsistencies in the evidence.

{¶23} Appellant also argues the "swing" was effectively a verbal warning to Smith and not a knowing attempt to cause physical harm. Gray determined, however, that the swing was an assault because it was an attempt to cause physical harm; Smith and Davis testified it did not connect only because Smith moved out of the way. R.C. 2903.13(A) does not require that a defendant cause physical harm; it also prohibits individuals from attempting to cause physical harm to another. *State v. Belcher*, 2nd Dist. Montgomery No. 24968, 2013-Ohio-1234, ¶ 57 [testimony of victim that defendant attempted to hit her and swung at her satisfies requirements for assault conviction]. See also, *State v. Varner*, 11th Dist. Ashtabula No. 2002–A–0083, 2004-Ohio-2790, ¶ 31; *State v. Barnes*, 8th Dist. Cuyahoga No. 87392, 2006-Ohio-5436, ¶ 11.

{¶24} Appellant also contends he did not intend to injure Smith with the swing, thus he did not have the requisite culpable mental state to sustain a conviction for assault. A person acts knowingly, regardless of purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. *State v. Miller,* 96 Ohio St.3d 384, 2002-Ohio-4931, at ¶ 31. "'Probably' is defined as 'more likely than not' or a greater than fifty percent chance." *Miller v. Paulson*, 97 Ohio App.3d 217, 222, 646 N.E.2d 521(10th Dist.1994). The probable result of appellant swinging at Smith in the manner shown on the video was that Smith would sustain physical harm, regardless of whether such harm occurred.

{¶25} Smith and Davis testified appellant "swung" at Smith; appellant admitted as much to Gray and at trial; and the video shows the "swing." We find

the evidence, if believed, sufficient to demonstrate appellant knowingly attempted to cause physical harm to Smith. We note the swing was accompanied by a threat to "break [his] fucking jaw," which appellant also admitted. Smith and Davis testified the swing did not connect because Smith moved back. Appellant's actions indicate knowledge, or even desire, that injury will occur. *State v. Fussell*, 8th Dist. Cuyahoga No. 87739, 2006-Ohio-6438, ¶ 44. The evidence adequately supported a reasonable inference that appellant acted knowingly. Id. at ¶ 46.

{¶26} In reaching this conclusion, we note that appellant's testimony at trial, and his insistence here, that he only threatened Smith conditionally is completely belied by the video. Although portions of the incident are shielded from view, it is apparent appellant rushed up to the scene of the men working, pulled into the grass of someone's yard, jumped from his vehicle, and swung at Smith. His rage and agitation are palpable. The suggestion in his testimony that he decided almost as an afterthought to "go talk to these guys" is belied by the manner in which he did so, which is more consistent with Smith and Davis' version of events.

{¶27} We conclude the greater amount of credible evidence supports appellee's version of events. Appellant's assault conviction is not against the manifest weight of the evidence and his sole assignment of error is overruled.

## CONCLUSION

{¶28} Appellant's sole assignment of error is overruled and the judgment of the Tuscarawas County Court is affirmed.

By: Delaney, P.J.,

Hoffman, J. and

Baldwin, J., concur.