[Cite as *State v. Hendricks*, 2020-Ohio-5218.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                      Court of Appeals No. L-19-1183

     Appellee                                   Trial Court No. CR0201802871

v.

John Alton Hendricks, Jr.                          **DECISION AND JUDGMENT**

     Appellant                                  Decided:  November 6, 2020

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Alyssa Breyman, Assistant Prosecuting Attorney, for appellee.

Autumn D. Adams, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Following a bench trial, defendant-appellant, John A. Hendricks, Jr., appeals

the July 23, 2019 judgment of the Lucas County Court of Common Pleas, convicting him

of felonious assault and assault.  For the following reasons, we affirm the trial court

judgment.

# I. Background

{¶ 2} According to the evidence presented at trial, on October 5, 2018, at approximately 1:50 a.m., Toledo Police Officers Richard Eckel and Paul Schwirzinski were dispatched to a home on Warsaw Street after the occupants of the home reported an unwanted person on the property. The officers, dressed in full police uniform and driving a marked police car, arrived to find Hendricks sitting on the porch.

{¶ 3} Both officers testified at trial. According to Officer Eckel, Hendricks appeared to be intoxicated—he had trouble standing up, his speech was slurred, he appeared bewildered, and he had to hold onto the house to balance himself. Officer Schwirzinski was "pretty sure" Hendricks was not drunk because he did not smell of alcohol, but it seemed to Officer Schwirzinski that Hendricks was not completely aware of what was going on and that he was under the influence of something.

{¶ 4} The officers handcuffed Hendricks so they could transport him to St. Vincent Mercy Medical Center "to sleep it off." Hendricks was not under arrest at this time, but it is Toledo Police Department policy to place a person in handcuffs before transporting them in a police vehicle.

{¶ 5} Hendricks was silent during the drive to the hospital, except to say that he was cold. When they got to St. Vincent, the officers removed Hendricks's handcuffs and escorted him inside. As they walked with him, he was so unsteady on his feet that Officer Eckel had to hold onto his back. They approached the check-in counter at the hospital.

2.

{¶ 6} Hendricks rested his elbows on the counter and was swaying back and forth like he was going to fall over. Officer Eckel kept a hand on his back the whole time so that he would not fall. As they continued to stand at the counter, Hendricks began looking around, then pushed back into Officer Eckel. Eckel told him to stop and just stand there, but Hendricks looked around and pushed back again; Officer Schwirzinski believed Hendricks threw an elbow back towards Officer Eckel. Hendricks then started punching at the officers.

{¶ 7} Officer Schwirzinski got Hendricks into a bear hug and almost restrained him, but Hendricks broke out of it and continued to punch at them. Officer Eckel punched Hendricks in the face to knock him down so they could gain control of him. Hendricks fell to the ground and Officer Eckel fell on top of him. As Officer Eckel put his hands out to catch himself, Hendricks punched him in the nose.

{¶ 8} Officer Schwirzinski got down on the floor too, and when he did, he noticed blood dripping out of Officer Eckel's nose. Officer Eckel's nose was broken; he required surgery to reset it. The injury continues to cause him pain and discomfort and he experiences a tingling feeling on the left side of his nose.

{¶ 9} On October 15, 2018, Hendricks was indicted on charges of felonious assault, a violation of R.C. 2903.11(A)(1) and (D), a first-degree felony (Count 1), and assault, a violation of R.C. 2903.13(A) and (C)(5), a fourth-degree felony (Count 2). Count 1 was premised on his assault of Officer Eckel, and Count 2 was premised on his assault of Officer Schwirzinski.

3.

{¶ 10} Following a bench trial on June 24, 2019, the trial court found Hendricks guilty of both counts.  It sentenced him to a prison term of four years on Count 1 and 12 months on Count 2, to be served concurrently.

{¶ 11} Hendricks appealed.  He assigns the following errors for our review:

I.  The Trial Court erred in denying Appellant's Motion for Acquittal.

II.  The Trial Court's finding of guilty to Count 1 is against the manifest weight of the evidence as the State of Ohio failed to prove beyond a reasonable doubt the mens rea of knowingly and actual injuries.

## II.  Law and Analysis

{¶ 12} Hendricks's two assignments of error challenge the sufficiency and weight of the evidence.  We address each of these assignments in turn.

### A.  Crim.R. 29

{¶ 13} In his first assignment of error, Hendricks argues that with respect to both his felonious assault and assault convictions, the state failed to prove the mens rea of "knowingly."  With respect to his assault conviction, he also argues that the state failed to prove that he "cause[d] or attempt[ed] to cause physical harm" to Officer Schwirzinski.

{¶ 14} A motion for acquittal under Crim.R. 29(A) challenges the sufficiency of the evidence.  *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 39.  The denial of a motion for acquittal under Crim.R. 29(A) "is governed by the same

4.

standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶ 15} Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker*, 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978).

{¶ 16} Felonious assault is codified under R.C. 2903.11(A)(1) and provides that "[n]o person shall knowingly * * * [c]ause serious physical harm to another or to another's unborn." R.C. 2903.11(D)(1) provides that "[i]f the victim of a violation of division (A) of this section is a peace officer * * *, felonious assault is a felony of the first degree."

{¶ 17} Assault is codified under R.C. 2903.13(A) and provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." Under R.C. 2903.13(C)(5), "[i]f the victim of the offense is a peace officer * * * while in the performance of their official duties, assault is a felony of the fourth degree."

5.

## 1. Knowingly

{¶ 18} Hendricks maintains that the state failed to prove the element of "knowingly" with respect to both his convictions, however, the argument in his brief focuses only on his felonious assault conviction. Hendricks argues that (1) the state failed to prove that he was aware that "the probable result of him pushing himself off the counter would be the injuries Officer Eckel ultimately suffered," (2) a rational trier of fact could have found that Hendricks's "punching was a direct result of [Hendricks] being grabbed by Officer Schwirzinski and/or being punched in the face by Officer Eckel," and (3) a rational trier of fact could have found that Hendricks's "arm movements were the result of Hendricks trying to stop himself from falling to the ground."

{¶ 19} Under R.C. 2901.22(B), "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." Courts have recognized that absent an admission, whether a person acts knowingly can be determined only from the surrounding facts and circumstances, including the doing of the act itself. *In re S.C.W.*, 9th Dist. Summit No. 25421, 2011-Ohio-3193, ¶ 18. It is a subjective determination, but it is decided on objective criteria. *Id.* Importantly, under R.C.

6.

2901.21(E), "[v]oluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense."

{¶ 20} We begin by noting that while Hendricks recites the proper standard of review, his argument in support of his first assignment of error misapplies that standard. Specifically, he insists that because "a rational trier of fact could have found" that he did not knowingly punch Officer Eckel, the state failed to present sufficient evidence to sustain his conviction. But the standard here is not whether a rational trier of fact *could have* resolved factual conflicts in favor of the defendant; it is whether the state presented evidence, which, if believed, would support a conviction. *State v. Mitchell*, 183 Ohio App.3d 254, 2009-Ohio-3393, 916 N.E.2d 876, ¶ 17 (6th Dist.). In other words, a verdict will not be overturned on the basis of insufficient evidence simply because a trier of fact *could have* found that Hendricks did not act knowingly; it will be overturned only if the state failed to present evidence going to each element of the offense—here, "knowingly" is an element of the offense.

{¶ 21} According to the evidence presented at trial, Hendricks repeatedly swung at both officers, and as Officer Eckel was falling to the ground on top of Hendricks, Hendricks swung again, striking him directly in the face. Officer Eckel testified:

Q: Okay. You said that a fight ensued. What do you mean by that * * * ?

A: He started to throw punches at my partner and I.

7.

Q: And what did you do in response?

A: After he almost hit me, I did punch him in the face to knock him down and as he fell and I fell on top of him, he came up with one more punch and caught the side of my nose and broke it.

* * *

Q: You mentioned the Defendant swung at you and hit you directly in the face?

A: Yes.

{¶ 22} Officer Schwirzinski testified:

Q: And you said that after he pushed back he threw an elbow, he kind of squared up with you guys and began to throw punches, is that what you said?

A: Yes.

Q: Do you recall who threw the first punch?

A: He threw, I thought – I think a couple more punches toward me. I ended up getting him in like a bear hug and then he kind of like hopped up and got out of it. And that's when he was like – he threw a couple of more punches, I believe, at Officer Eckel and Officer Eckel threw a punch at him and that's when they kind of both went down.

* * *

Q: And those punches were thrown both at you and Officer Eckel?

A: Yes.

{¶ 23} "A person acts knowingly, regardless of purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." *State v. Buchar*, 5th Dist. Tuscarawas No. 2017AP010003, 2017-Ohio-7601, ¶ 24. The probable result of swinging a fist at a person is that that person will sustain physical harm, and perhaps serious physical harm. *Id.* *See also In re R.A.M.,* 11th Dist. Lake No. 2010-L-011, 2010-Ohio-4198, ¶ 6 ("[S]winging an object toward a person is likely to cause the object to come into contact with the person."). To that end, courts have recognized that the act of "'punching someone' is sufficient to establish the element of 'knowingly'" for purposes of the assault statutes. (Citations omitted.) *State v. Pigg*, 2d Dist. Montgomery No. 25549, 2013-Ohio-4722, ¶ 33. In *State v. Beaver*, 3d Dist. Union No. 14-13-15, 2014-Ohio-4995, ¶ 37, for instance, the court concluded that "[p]unching someone in the face satisfies the requisite culpable mental state for felonious assault— that is, [the appellant] was aware that punching [the victim] in the face would probably cause her serious physical harm."

{¶ 24} We reach the same conclusion here. We find that, if believed, this evidence—that Hendricks swung and hit Officer Eckel in the face as Eckel fell on top of him, breaking Eckel's nose and necessitating surgery—was sufficient to support the trial court's conclusion that Hendricks knowingly caused serious physical harm to Officer

9.

Eckel. Additionally, his conduct in swinging at Officer Schwirzinski also demonstrates the culpable mental state required to convict Hendricks of assault.

### 2. Cause or Attempt to Cause Physical Harm

{¶ 25} With respect to his conviction for assault, Hendricks also argues that the state failed to prove that he caused or attempted to cause physical harm to Officer Schwirzinski. He argues that (1) the state presented no evidence indicating that Officer Schwirzinski suffered any injury, illness, or other physiological impairment; and (2) the state failed to prove that he knew that Officer Schwirzinski was anywhere near him such that he should have been aware that Officer Schwirzinski could be harmed.

{¶ 26} The state responds that Officer Schwirzinski testified that Hendricks threw punches at both officers, and it argues that the video shows that Officer Schwirzinski tried to restrain Hendricks, but that Hendricks broke free, turned around, and threw more punches at him.

{¶ 27} A person may be convicted under R.C. 2903.13(A) where he or she causes *or attempts to cause* physical harm to another. *See State v. Buchar*, 5th Dist. Tuscarawas No. 2017AP010003, 2017-Ohio-7601, ¶ 23. ("R.C. 2903.13(A) does not require that a defendant cause physical harm; it also prohibits individuals from attempting to cause physical harm to another."). "Physical harm is not a requirement," and is unnecessary to sustain a finding of guilt under R.C. 2903.13(A). *State v. Hudson*, 1st Dist. Hamilton No. C-170681, 2019-Ohio-3497, ¶ 9 (finding that "[e]vidence that [appellant] elbowed [one

10.

officer] in the chest and took a swing at [the other] is enough for the jury to find attempted physical harm to both [officers]").

{¶ 28} In *State v. Cossack*, 7th Dist. Mahoning No. 03-MA-263, 2005-Ohio-965, ¶ 82, the defendant was convicted of two counts of assault. The first was based on his conduct in swinging at one officer and the second was based on his conduct in throwing an elbow at the back of another officer's head. The defendant failed to make contact either time, nevertheless, the court concluded that the evidence demonstrated that the defendant "knowingly attempted to cause physical harm to both officers, thus meeting the elements of assault." *Id.* at ¶ 83. Similarly, in *State v. Belcher*, 2d Dist. Montgomery No. 24968, 2013-Ohio-1234, ¶ 57, the court held that the victim's testimony that the defendant swung at her at least three times was alone sufficient to satisfy the requirements for a conviction on an assault charge. *See also State v. Taylor*, 3d Dist. Marion No. 9-10-14, 2010-Ohio-4810, ¶ 5 (upholding appellant's assault conviction where he swung at the police officer but did not land the punch because the officer reached out his hand to block it.).

{¶ 29} Here, as in these other cases, we find that the state's evidence that Hendricks swung at Officer Schwirzinski was sufficient to establish that Hendricks attempted to cause the officer physical harm.

{¶ 30} Accordingly, we find Hendricks's first assignment of error not well-taken.

11.

## B. Manifest Weight

{¶ 31} In his second assignment of error, Hendricks argues that his convictions are against the manifest weight of the evidence. He maintains that the evidence is clear that he was not in control of his own body and was unable to even bear his own weight, thus the evidence with respect to his felonious assault conviction weighs against a finding of guilty. He further claims that Officer Schwirzinski suffered no physical harm, the officers presented "wildly different" versions of what happened, and the movements he made toward Officer Schwirzinski demonstrated an attempt to break free—not an attempt to harm him.

{¶ 32} When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. We do not view the evidence in a light most favorable to the state. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson*, 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 15, citing *Thompkins* at 388. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

12.

{¶ 33} In addition to the testimony of Officers Eckel and Schwirzinski, the state admitted into evidence a recording from a video camera located behind the check-in desk at the hospital. That video, which does not contain sound, is open to some interpretation but is largely consistent with the officers' testimony. Hendricks is escorted into the hospital by two officers. He appears unsteady, and is not walking a straight line; he runs into the door. They approach the check-in counter and Hendricks places his elbows and forearms on the counter, seemingly to steady himself. Officer Eckel maintains one hand on Hendricks's back at all times as he leans on the counter; it sometimes appears that Hendricks would fall over without the support.

{¶ 34} After a few seconds, Hendricks pushes himself into an upright position. He looks around, then makes a move toward the officer. It is not clear if this first move is intentional or if he is falling over and simply jerks to try to steady himself. Either way, the officers interpret the movement as aggressive and try to restrain him. Hendricks fights this. He breaks free from the officers' grasp and starts swinging. The tussle lands him and Officer Eckel on the ground, at which point the officers continue their efforts to subdue him; Hendricks kicks and flails. One of the officers punches him and it appears that at that point, Hendricks finally relents. Additional officers arrive on the scene.

{¶ 35} As to the felonious assault conviction, it is undisputed that Hendricks broke Officer Eckel's nose, necessitating surgery. We have already explained that with respect to the assault conviction, the defendant need only *attempt* to cause physical harm; actual

13.

physical harm is not required. So it is immaterial whether Officer Schwirzinski actually suffered physical harm.

{¶ 36} Turning to Hendricks's other arguments, it is not entirely clear in what manner Hendricks believes the officers' accounts are inconsistent. Officer Eckel believed that Hendricks pushed his body back at him, and Officer Schwirzinski believed that in pushing back off the counter, Hendricks threw an elbow back. Either way, the sudden movement alarmed the officers, and they took swift action to try to restrain Hendricks. Hendricks swung at them in what appeared to be a struggle to avoid restraint, swung again after escaping restraint, then, according to Officer Eckel, swung yet again as Eckel fell on top of him.

{¶ 37} In *State v. Kunzer*, 3d Dist. Crawford No. 3-18-17, 2019-Ohio-1042, ¶ 15, the court held that "the jury could infer that, since [appellant] was in the midst of an altercation with [an officer], he was aware that his continued efforts in resisting [the officer's] struggle to restrain him would probably cause [the officer] physical harm." Similarly, in *State v. Munoz*, 10th Dist. Franklin No. 12AP-299, 2013-Ohio-4987, ¶ 11, the court held that the defendant's act of flailing his arms with the officer nearby rendered it likely that contact would occur, thus the act of striking the officer was a reasonable and probable consequence of his own action. *See also State v. Noble*, 9th Dist. Lorain No. 94CA005862, 1995 WL 366069, *3 (June 21, 1995) (holding that evidence that officer was struck by defendant's flailing arms and legs during struggle to subdue him was sufficient to support assault conviction); *State v. Trikilis*, 9th Dist.

14.

Medina No. 04CA0096-M, 2005-Ohio-4266, ¶ 23-24 (rejecting challenge to sufficiency of assault conviction, reasoning that "[a]ppellant's actions of attacking one officer and then flailing his arms while being restrained are sufficient to demonstrate that he knew that his actions would 'probably cause a certain result,' i.e., an injury to an officer.").

{¶ 38} Even assuming that Hendricks's first movement—pushing (or perhaps falling) back from the counter—was unintentional, this was not the conduct upon which his convictions were based. Rather, his convictions were based on his repeatedly swinging at the officers, ultimately punching Officer Eckel in the nose, as they tried to restrain him.

{¶ 39} Hendricks argued at trial that his conduct was "reckless" and not "knowing." Although under a manifest-weight standard we consider the credibility of witnesses, we must nonetheless extend special deference to the fact-finder's credibility determinations given that it is the fact-finder who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14. After reviewing the evidence, the trial court found that Hendricks acted knowingly. We cannot conclude here that the evidence weighs heavily against this finding.

{¶ 40} Accordingly, we find Hendricks's second assignment of error not well-taken.

15.

### III. Conclusion

**{¶ 41}** We find that the evidence was sufficient to establish the element of "knowingly" with respect to Hendricks's felonious assault and assault convictions, and the element of "attempt to cause physical harm" with respect to his assault conviction. We also find that his convictions were not against the manifest weight of the evidence. We find his two assignments of error not well-taken.

**{¶ 42}** We affirm the July 23, 2019 judgment of the Lucas County Court of Common Pleas. Hendricks is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.           _____
                                                  JUDGE
Christine E. Mayle, J.            

                                                _____
Gene A. Zmuda, P.J.                                       JUDGE
CONCUR.

                                                  _____
                                                  JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.